Good morning. We'd appreciate each appellant indicating how much time she or he would like to rebuttal. Would the clerk call the first case, please? Case No. 14-5714, Ferfin Amos v. McNairy County, at all. Oral argument not to exceed 15 minutes for five. Good morning. I would like to reserve five minutes for rebuttal, please. Fine. Procedurally, this case has been very unique. We had a ruling in January of 2014 granting summary judgment to the defendant on the issue of discrimination and the Tennessee Public Protection Act. But there was a denial of the summary judgment on the retaliation claim. As we were getting ready for trial in April of 2014, we had a pretrial conference. And at the pretrial conference, the issue of the military discharge came up again. At that particular point, the judge called us five days later and said he would like to have a telephone conference with us. And he did that. And he said he was going to revisit the issue of whether the military discharge required Mr. Amos to be fired. He invited us to submit briefs. And we did that. We both submitted briefs. And the briefs were limited to whether on the military issue. And we both submitted those briefs. The court then ruled that it did not have to go into the quagmire of the military issue. The court then ruled that the real issue was the honest belief rule. When the order came down, Mr. Amos filed a Rule 60b motion and said, you know, we had additional evidence that we would have liked to submit it. We then did submit that evidence to the court in the form of an affidavit. The court still ruled that the summary judgment would stand and the case was over. You submitted the affidavit on the motion for reconsideration, did you? That's correct. That's correct. Were you asked to rebrief the honest belief rule? If I understood you, you were not. You were simply asked to rebrief the military discharge rule. That's correct. Which the district court then didn't take into account in granting summary judgment on the retaliation claim. So had the honest belief rule been in the case previously? It had not. The only mention of it anywhere was three sentences that the defendant brought about in the supplemental brief that the court requested right before the trial. Is this the one that was supposed to discuss the military discharge? It was, Your Honor. Were those briefs simultaneously filed? They were, within a day of each other. Did you have an opportunity at that point to file a reply brief? I guess you were briefing simultaneously. We were. Was the Bivens affidavit about the call to the VA representative, was that submitted along with the defendant's supplemental brief or was that already in the record in some way? It was not in the record. At that point, when we submitted these supplemental briefs simultaneously within a day of each other, the issue was limited to just the military discharge issue. And so those three sentences seemed to be extraneous. And they were not a part of an affidavit but were a part of a brief, right or wrong? Well, I'm saying that the defendant's three statements about him relying on the VA lady's advice was in there, but it was extraneous to the reason for the brief. Then was it in the brief or an affidavit? Because if it's in the brief, it's not evidence. If it's in an affidavit, it is. I see your point. I'm sorry. When the defendant put it in the brief, it referred to a sentence that was on the record that was on a page in the deposition of the sheriff that he had relied upon it. So that's how the defendant got it into evidence. Okay. That's what I was asking about.  At that point, the court then ruled and did not rule on the military issue as it said it was going to. It ruled on the honest belief rule. We asked for permission to be able to brief the honest belief rule because nobody had ever briefed that yet. It had not come up yet. We also submitted the affidavit of Judy Bivens to the court to say this was our evidence. Had they listed her as a witness at the trial? Had it ever come up before? We had her as a rebuttal witness, and we wanted to show the court that. So we submitted the affidavit. We believe that all the evidence is now before the court, and the court had it before its ruling in May. It had all the evidence. But the district court had your Bivens affidavit when it ruled on the 60B motion. It did. And the district court did not reject the Bivens affidavit, but am I correct on that? Not procedurally. My understanding was that the court just said that that affidavit did not disprove that the sheriff had an honest belief. I'm sorry. I misspoke. I was misremembering names. I was thinking the sheriff was named Bivens, but the VA person is named Bivens. So I'm afraid I got everybody a little off. That's correct. So that's where we are procedurally. That left the retaliation claim unappealed as well. So we've got three claims unappealed, the retaliation claim, the discrimination claim, and the TPPA whistleblower claim. We feel like in the retaliation claim that the court made two errors. The first error was that it used the bare-bones honest belief rule approach instead of the modified honest belief rule approach that this court requires. Also, in doing so, it ignored an abundance of evidence of the dishonesty of the county in the termination of Mr. Amos. Evidently, the prima facie ruling stood. It was just that the pretext and the honest belief rule were at issue in his final ruling on that. The military issue, there's enough evidence before this court that the court can rule on that issue here. We feel like that with the rules and the laws that we have presented to the court, that there is no requirement that a corrections officer in Tennessee not be allowed to serve as a corrections officer with a general discharge under honorable conditions. If that's the case, then there are corrections officers and TBI agents and sheriffs and state troopers all across the state who have those types and who are allowed to have that type of a discharge. Is this a question of law or a question of fact? The court found that it was a question of law, and that's why it had to. It asked for the supplemental briefs and wanted to revisit that issue because that was not something it felt like that the jury could determine. My understanding is that the state has a new provision that allows for waivers if you have a general discharge under honorable conditions. How does that impact your argument about what the law was when the events in question occurred? That is exactly what the defendant argued. That was the one argument that the defendant had, that there was a TCI rule that allowed a waiver if a corrections officer had this type of discharge. The key point about that is that that rule was only in effect for a six-month period, and it was after any of the facts of this case. It only came into effect the next year. And then it was a temporary rule, and it was allowed to last at the end of six months. We would argue that it was allowed to last because there was no reason for it to begin with. That was the only argument that the county had. Because it's correct or incorrect that there's not really a difference in the two types of discharge. If I'm understanding your question correctly, the type of discharge, there are two categories of discharges. There are honorable discharges, and there are others than honorable discharges. Sturgeon Amos' discharge was an honorable discharge because there are two types of honorable discharges, an honorable discharge and a general discharge under honorable conditions. All across the realm, you will see that. We provide a lot of evidence that his fault is an honorable discharge. So perhaps that rule went into effect by mistake, but it was allowed to last, and it wasn't a rule at any time in his case. The real point would be that the fact that the VA representative said something other than the sheriff said would call into question the sheriff's truthfulness and whether his belief was in fact an honest one. Correct. Okay. Correct. Correct. There were also two other reasons that they gave for Mr. Amos' discharge. One was job performance, but there's nothing in the record that he had anything other than great job performance. The third one was that he did not have his military discharge paperwork there for the court, for the sheriff to see, and that's not true either. It was there when he was hired, and they had an additional copy of it before he was terminated. So your position is that the evidence that is in the record shows that he did produce, your client did produce his military discharge papers. It was really the question as to what kind of a discharge it was, the substance of it, as opposed to the existence of papers. Correct. Okay. I think my time is up. Thank you. Well, before you go, I'm not so interested in this discharge issue, but I'm a little more interested in the magistrate's finding that the county intentionally destroyed unfavorable evidence concerning other background checks, and when we determine pretext, I think that's your strongest evidence. I'm not quite sure, can you explain to me how that came about and what the finding was? The county said that they performed background checks on all the employees, not just, this is the second round of background checks, not just on your client when the new sheriff came in, but the magistrate said that they destroyed records and therefore you were entitled to a negative inference against the county. Can you explore that issue a little bit more? Because I think that's the strongest issue of pretext here, if they're intentionally doing wrongdoing here. I'll be glad to. The EEOC came for a visit in May of 2011. The day after the visit, the county testified, the sheriff testified that they did background checks on everyone. We knew they did one on Serf and Amos, but the county testified, well, we did one on everybody that same day, not just him, and it was because it was the day after the EEOC visit. The county also called Arizona Phoenix and asked for evidence of a 14-year-old misdemeanor on Mr. Amos on the day after that as well. There was some question as to whether they did really do background checks on all the employees that day, or was it just Mr. Amos? That would show that they focused in on him and they retaliated against him, and that's your whole claim here is retaliation. Right. Okay, so they said they did. They said they did, and we asked for evidence of it, and it wasn't just the typical background check that was done. It was they had a company that they had a service that they could do background checks. When we asked for that, to make a long story short, the county had had several passwords, more than four passwords, to get into the account, and they said, well, we've lost all our passwords. We can't get into the account and get you evidence of those background checks on that particular day. So we did a lot of discovery with this company and eventually found out that there were not nearly that many background checks on that particular day, and it looked like to us that there was just only one and maybe some other things on some other criminal defendants and things like that that were done. So the evidence was never presented to us that there were other background checks. So there were two things involved. Number one, there were not enough. We knew that there were not enough because we saw the number of the background checks, and there was not enough for all the employees to have been done, not nearly enough. The second point was that they, the court found that they intentionally destroyed those passwords so that they couldn't have access to it. The company told us, because it's a law enforcement agency, that they can't, without the passwords, go into it and look because they have to keep that secure. So the court found that there was bad faith by the county in not keeping those passwords. One key thing to see here is that we requested this in discovery a couple of times, and the passwords were still active then. The passwords did not become active until this all really became a hot issue. So the ruling in the lower court was you were entitled to an inference that only Mr. Amos had this background check and the other employees did not have a background check despite what the county said? I'm not sure that those were the exact words, but that was the gist of it. Okay. Then how in the ruling granting summary judgment did the district judge overcome that inference? That is our argument to this court, that it didn't address it. It didn't address it? They seem to be focused on this discharge issue, which is hard to figure out, but I'm not sure it's even material, that's all. In our brief, we've listed, I think, about ten examples of dishonesty, and that was one of the key examples. All right. Well, these are probably questions for the other counsel. Thank you. Thank you. I'm going to place the court. Jim Pentecost from the Jackson-Madison County Bar of Tennessee. Representing McNary County as it relates to the appellees. We believe that there are numerous facts that are undisputed that support this court's de novo review as it relates to what Judge Breen did, the trial court did in making the ruling, both as it relates to all claims of the plaintiff, as it relates to the race discrimination based upon either the transfer, the wages, or the promotion. The court adequately addressed each of those legal elements. As it relates to the Tennessee Public Protection Act, he addressed that concerning what was in the record and shown, and is shown in this record that is before the court. As it relates to the retaliation claim that was brought. We filed our brief in January of 2013, which was not responded to until after numerous discovery until December of 2013. During that period of time, Nassar came out, which is a Supreme Court holding as it relates to the retaliation claim. Changing the standard completely as it relates to what is required for a plaintiff to show. I want to pick up where Judge Griffin left off. If I'm understanding correctly, the finding as to discovery permits an inference that, one, the background check on Mr. Amos was done the day after the, in fact, I think that's undisputed, was done the day after the EEOC was present on the premises. And two, supports an inference that, contrary to what the sheriff asserted, the background check was done only on Mr. Amos. Is that right or wrong? I believe that's wrong as it relates to what the magistrate judge decided. What do you believe the permissible inference is to be drawn from the destruction of evidence? Well, he did not set out what the inference was. He just simply said that he believed the magistrate judge did. Now, we appealed that, and it was on appeal before a judge. Did the district judge ever address it one way or another? I believe, excuse me, Your Honor, I believe he addressed it when he said in the reconsideration of retaliation where he said, I'm not even going to deal with the outstanding warrant that exists in Arizona. I am looking at the military issue and the good, honest belief of the sheriff as it relates to that retaliation. Well, you can't, I mean, how do you legitimately do that? I mean, if you're dealing with all the issues in the case, you know, and at a minimum, even if you are just focusing on honest belief, why would that not be relevant to whether the belief was honest? I mean, whichever way you cut it, I don't see how you don't start out with an inference that's favorable to the plaintiff as a part of the retaliation analysis. Your Honor, first of all, the only thing that that relates to is the temporal proximity, which is a prima facie proximate causation. It has nothing to do with the pretextual nature in which the honest belief rule addresses. It can or cannot go to, I mean, it could go to both, I would think. I do not believe that it does go to both based upon the- would go to whether the belief was indeed an honest one. So it really doesn't matter whether it falls at a different point. I understand that ordinarily you might consider it at a different point in the analysis, and I understand perfectly well what issues it could go to. I just don't know why it wouldn't also go to whether the belief was an honest one, because, you know, the entire history of truthfulness or untruthfulness would seem to be relevant. I do not believe that what the magistrate ruled first was correct. He applied the wrong law. He applied state law, not federal law. He did not apply it to the facts that existed. We had appealed that. What are the facts that would contradict the picture that we received from Ms. Luna? What was contradicted is in the record as it relates to our appeal. But, Your Honor, this is basically it. One is that at the beginning of discovery we presented the TLO printout of Mr. Amos. There is nothing to dispute that the sheriff began this review of the employees in 2010, late 2010, and in 2011. There is nothing to dispute that. Mr. Amos does not dispute that. There is no dispute that there was an outstanding warrant that existed in the state of Arizona no matter how it was proved. We're talking about the truthfulness of the representation that on the day in question, other employee background checks were initiated as to other employees. The record shows, the TLO record shows numerous searches made by the McNary County Sheriff's Department. And that is in the record. On that particular day? Not on that particular day. That was the print of Mr. Amos' TLO record. The TLO record... I thought that the argument was that the county said that the searches were done on many people the same day that the search was done on the plaintiff, Amos, here. The county said, that is in the record, that they did numerous searches on the employees through the free service of TLO. On that day? No, not on that date. So, the county's position was that they only searched Amos on the day after the EEOC came to investigate the Amos situation? It clearly shows that it was printed that day, that was placed in Mr. Amos' file, as it relates to the outstanding warrant that no one disputes existed in Arizona. Much less the facts as it relates to the military, which is clearly an honest belief by the sheriff, concerning his decision regarding the termination of Mr. Amos because he did not meet the qualifications under the statute. What about, if we want to get to the honest belief merits on the military issue, what about the Bivens affidavit that she says she didn't ever tell the sheriff person that this was not a honorable discharge? She did not make a statement in her affidavit that she did not tell the sheriff. First of all, the sheriff did not, the proof in the record shows that the sheriff never asked her for her interpretation of the statute that applied to him. He did go and pick up the form. The record shows that the sheriff asked her, is he correct as it relates to the block that is to show honorary discharge? The proof in the record clearly shows that there is a clear distinction between an honorable discharge and a discharge under general, under honorable conditions. Because, why would the plaintiff put on all this proof that for you to go from a discharge under honorable conditions to an honorable discharge requires several steps which Mr. Amos attempted but could not obtain? So there is clearly a difference that was reasoned by the sheriff to confirm as it relates to the military requirement that was placed upon all jailers pursuant to the statute which he would be subject to criminal activities if it did not, if a person did not meet those qualifications. And then under the honest belief rule, as the case law says, it doesn't matter whether it's erroneous, whether it's trivial as concerning the outcome or what the dispute is. But in this, it clearly shows that was based upon the regulation presented by the Tennessee Correctional Institute that clearly said that during this period of time, you can ask for a waiver as to a jailer who did not have an honorable discharge. When was that waiver rule in effect? I was under the impression it was not in effect at the time that Amos was fired. You are correct about that. But what I'm saying, Your Honor, is that under the honest belief rule, it doesn't require the sheriff to be correct. But it did show that the sheriff was correct and it did show that he had a belief that existed under the TCI. Your opponent told us in oral argument that the waiver provision was in effect only six months. Is that correct? It was in effect for a limited period of time as it relates to what was allowed under the waiver section. It went into effect March the 5th of 2013 as an emergency rule, which was in effect from September the 6th, 2012, effective through March the 5th of 2013. That's clearly stated in the regulation. The waiver provision was eliminated? A waiver is not allowed to be requested by a sheriff under this regulation as it relates to a jailer who has a general discharge under honorable conditions. All right, counsel. Let's get back to the intentional destruction of the evidence and the negative inference that the magistrate judge found to be appropriate. You say you appealed that to the district judge. Did the district judge reverse that finding of fact? No, sir, Your Honor. All right, so that finding of fact remains in the record. Isn't that finding of fact alone enough to establish a genuine issue of material fact as the pretext? First, Your Honor, I do not believe that's a finding of fact since we appealed it and it has not been decided. It's a finding of fact that has not been reversed, so it's still there, isn't it? Yes, sir, it is still there, but it's not controlling. It's not controlling. All right, well, isn't that, at least that you have a reasonable magistrate that found this, isn't that enough to allow a reasonable juror to find that the reason was pretextual? No, sir, Your Honor. Why not? Because that relates, again, to temporal proximity, not as it relates to... because of an EEOC complaint and then they lied that they actually didn't target him. They conducted background checks on everyone and the magistrate said, no, I don't think so. It goes to the whole issue of retaliation, doesn't it, and their motive. Why not? First of all, Your Honor, the ruling of the magistrate was not that. The ruling of the magistrate was simply that Chief Strickland did use a password after over six months that no one can remember a password, so we go to the facts that we are disputing on the magistrate judge. But there is nothing that the plaintiff has presented as to the prima facie case that disputes that the sheriff was not undertaking activities to meet the qualifications and to ensure that everybody meets the qualifications as it relates to being a jailer. One of those qualifications he had an honest belief in as it relates to the military discharge, which is clear. It is reasonable by the sheriff. It is supported by the activities that he undertook. It is not contradicted by the affidavit of Mrs. Bivens, as I have set forth and shown, and it is a reasonable belief. There is no showing that that motive was incorrect and should not be given that element of support and under the record. Mr. Pinnacott, I have two quick questions. These are not discursive answer questions. Do you have handy the reference to the deposition in which the sheriff said that he called the representative of the VA? Do you have it handy? If you don't, I'll find it. I believe that it is in the joint record numbers 2663, numbers 2664. It is also supported by Chief Deputy Strickland's testimony under page 2787. I believe I'm correct as to that. Okay. Two things. The magistrate judge specifically found, did he not, that the decision to change the password was evidence of bad faith. The fact that no other valid passwords were provided provides further evidence of bad faith in regards to this discovery. Thus, the court finds spoliation and will allow an adverse inference at trial as to these TLO documents. That's in the magistrate judge's order. And that specific finding was not at any time disturbed by the district court. Is that correct? That is correct, Your Honor. It was appealed by us.  It was not disturbed. But, Your Honor, in the addressing, I believe that the district court in the footnote said he's not going to get into the outstanding warrant. And there is no dispute that an outstanding warrant existed as to Mr. Amos. And there's no dispute that that outstanding warrant as to Mr. Amos would not qualify him to be a deputy under the laws of the state of Tennessee. I thought the district judge decided against you on the outstanding warrant. No. Decided in your favor only on the military discharge point. In his ruling, the footnote that's dropped says he's not even going to address the outstanding warrant, which we think he should have. Which we think goes... He says he's letting his prior ruling on that stand, which is that it was adverse to you. But I'm curious, your point about the Bivens affidavit. I pulled the Bivens affidavit, and she says in her paragraph 5, in my opinion, a general discharge under honorable conditions is not considered an other than honorable discharge. That's all of paragraph 5. In paragraph 6, I would not give anyone an opinion different from the opinion described above. So isn't her affidavit directly contrary to the position that your side is taking? No. Why not? One is that it clearly shows that there is a difference between an honorable discharge and a discharge under general conditions. She clearly says that those are two different types of discharges. There is nowhere in the record that Sheriff Buck asked for her opinion as it relates to the interpretation of the statute. He says that I went and got the form because Mr. Amos did not provide to us the form. When I got the form, being in the military, I knew which block, along with Chief Deputy Strickland, I knew which block was going to be checked to show that it was an honorary discharge. And he says I asked her about that form and about that block to ensure that I was correct. He never asked her about... When you look at the statute, what's your interpretation? Because it's not her interpretation. It's his honest belief as to what that statute says. And there's nothing in the record that... What she might have told him is not relevant to his honest belief, you think? Correct. Thank you very much. Your red light's been on for a while. I'm sorry, Your Honor. No problem. I believe that you should affirm the district court's judgment. I'd like to address some of the questions the court just brought up. First, the affidavit of Judy Bivens. What she's saying is exactly what we've said in our brief, that there are two types of discharges. There are honorable and other than honorable. And that's the exact words that the statute uses, other than honorable discharges. And she is saying that he does not have an other than honorable discharge under the terms of the statute. There is evidence in the record that the county testified that they did, on the same day they did, the background check, the beefed up background check on Amos, that they did ones on all other employees. That is in the record. And the printing of it, he said they weren't all done, but they were printed that day. We would invite you to look at the motion for sanctions that we filed and the county's response. That's where all of the arguments are as to the issue that Judge Griffin has brought up about the background checks. It's all on the record in detail, what was done on that particular day, what the testimony was. Also, with regard to what Judge Griffin brought up, the close temporal proximity. We feel like that the day after the EEOC visit, that that's enough in and of itself. But we also presented an abundance of other evidence that shows pretext as well in our brief. And one of those was the destruction of the background check information by the county. Another one was look at the Bivens affidavit. She's directly contrasting what the sheriff is saying, that he asked her and got the advice from her and depended on her advice. She said, I wouldn't have given that. Is there a problem with our considering the Bivens affidavit, given that it didn't, it wasn't produced by you until the 60B motion? Your Honor, it was never, I say no, because it was never an issue in the case at all. The reason we presented the 60B motion was we felt like it was a real error of law and of fact. And that in sui sponte motion for summary judgment, we didn't have the opportunity to come forward and bring the evidence. So we still wanted the court to be able to rule on this below, without having to appeal it. So we present the evidence in a supplemental brief after our rule 60B motion, but before the court ruled on it. And the court did address it in its final order on the rule 60B motion. It addressed the affidavit and said, I see what she says, but it still doesn't mean that the sheriff didn't have an honest belief. And that takes us back to the modified honest belief rule. There has to be a reasonable investigation done and there has to be a reliance on particularized facts. And neither one of those are present here. The reasonable investigation would have been contacting the VA lady, perhaps. Perhaps the court would have found that might have been enough. But with her affidavit, I would have never said that. That's a credibility issue and that's for the jury to decide. It's not enough for the sheriff to say, I contacted Judy Bivins and got her advice. When there's evidence before the court and there was before the court, before it made its final ruling, that it still didn't accept that affidavit. That's all I have, Your Honor. Thank you. Thank you both. The case will be submitted.  Thank you.